1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSH & MCLENNAN AGENCY, LLC, | Case No. 20-cv-02679-HSG |
| Plaintiff, | **ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND GRANTING ADMINISTRATIVE MOTIONS** |
| v. | |
| TEROS ADVISORS, LLC, et al., | Re: Dkt. Nos. 68, 71, 74, 76, 83 |
| Defendants. | |

Pending before the Court are Defendant's motion for summary judgment, Dkt. No. 68 ("Mot."), 84 ("Opp."), 86 ("Reply"), and Plaintiff's cross-motion for summary judgment, Dkt. No. 71 ("Cross Mot."), 81 ("Cross Opp."), 85 ("Cross Reply"). Also pending are Plaintiff's administrative motions to file documents under seal in connection with its briefs. For the reasons discussed below, the Court **DENIES** the parties' cross-motions for summary judgment and **GRANTS** Plaintiff's administrative motions to seal.[1]

**I.    BACKGROUND**

"MMA is a world leader in the [sic] risk and insurance and in employee benefits brokerage and consulting" that "provides clients with a comprehensive array of benefits solutions, including managing employee benefit plans, assisting clients with choosing the right employee benefits plans to fit their needs, providing access to market experts, and advising on regulatory compliance." Dkt. No. 74-2 Declaration of William Peartree ("Peartree Decl.") ¶ 3. "Elmer Ferguson came to MMA when MMA acquired his then employer Barney & Barney, LLC."

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

United States District Court
Northern District of California

1   *Id.* at ¶ 7.[2]  On February 1, 2014, Ferguson signed a non-solicitation and confidentiality agreement

2   ("MMA agreement").  *Id.* ¶¶ 6–7.  The MMA agreement states:

3          Employee agrees that he or she will not, while associated with the
           Company and for so long thereafter as the pertinent information or
4          documentation remains confidential, for any purpose whatsoever,
           directly or indirectly use, disseminate or disclose to any other person,
5          organization or entity Confidential Information and Trade Secrets,
           except as required to carry out his or her duties as an employee of the
6          Company . . . .

7          [. . .]

8          Employee covenants and agrees that in the event of separation from
           employment with the Company, whether such separation is voluntary
9          or involuntary, Employee will not, for a period of (24) months
           following such separation, directly or indirectly use [MMA's]
10         Confidential Information and Trade Secrets or related information
           regarding the Company, the Company's clients and its prospective
11         clients to solicit clients or prospective clients of the Company for the
           purposes of selling or providing products or services of the type sold
           or provided by Employee while employed by the Company.

12  *Id.* ¶ 6, Ex. A.

13         Between about September or October 2018, Ferguson spoke to Nathan White, the

14  president of Teros, and White pursued bringing Ferguson to Teros.  Dkt. No. 68-8 Deposition of

15  Nathan White ("White Depo.") at 129:19-131:5.  On January 11, 2019, Ferguson emailed White a

16  list identifying 46 clients and other information.  Dkt. No. 74-7, Ex. D.  On January 29, 2019,

17  Ferguson sent White a follow-up email with a list of clients.  Dkt. No. 74-15, Ex. H.  On February

18  13, 2019, Ferguson sent a number of emails with various attachments to his Teros email.  Dkt. No.

19  74-19, Ex. K.  Ferguson sent various emails to clients in mid-February stating, for example, that

20  he "decided to change [his] back office affiliation from MMA Securities to Teros Advisors," and

21  that he believed "the expanded capabilities Teros provides . . . w[ould] be of interest to [the client]

22  and [its] employees."  Dkt. No. 74-13, Ex. G.  On February 15, 2019, Ferguson resigned from

23  MMA.  Peartree Decl. ¶ 11, Ex. D.

24         Plaintiff alleges that Defendant misappropriated its client-related trade secret information.

25  *See generally* Dkt. No. 75 ("FAC").  According to Peartree, "as a result of [] Ferguson's actions,

26  approximately 14 of MMA's clients left MMA."  Peartree Decl. ¶ 12.  Plaintiff filed this action

27

28  ───────────────
    [2] The facts set out in this section are undisputed unless otherwise noted.

2

1   raising trade secret misappropriation claims under the Defend Trade Secrets Act ("DTSA") and

2   California's Uniform Trade Secrets Act ("CUTSA") and other state-law claims.  FAC ¶¶ 75–114.

3   **II.   REQUESTS FOR JUDICIAL NOTICE**

4           The parties each filed requests for judicial notice.  In *Khoja v. Orexigen Therapeutics*, the

5   Ninth Circuit clarified the judicial notice rule.  899 F.3d 988 (9th Cir. 2018).  Under Federal Rule

6   of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute

7   because it … can be accurately and readily determined from sources whose accuracy cannot

8   reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial

9   notice of matters of public record," but "cannot take judicial notice of disputed facts contained in

10  such public records."  *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit

11  has clarified that if a court takes judicial notice of a document, it must specify what facts it

12  judicially noticed from the document.  *Id.*

13          Plaintiff requests that the Court take judicial notice of the order on MMA's motion for

14  preliminary injunction filed in the lawsuit filed by MMA against Ferguson.  Dkt. No. 72.

15  "Filings in other courts are the proper subject of judicial notice when directly related to the case,

16  but only for the existence of assertions made therein, not for the truth of the matters asserted."

17  *Berman v. Modell*, No. 15-CV-04895-HSG, 2016 WL 8730445, at *1 (N.D. Cal. Apr. 29, 2016)

18  (citation omitted).  Because the filing is related to the case, the Court **GRANTS** Plaintiff's request

19  and takes notice of the order's existence.

20          Defendant requests that the Court take notice of various "laws, facts, and regulations,"

21  including SEC regulation S-P, FINRA Rule 2140, and the "fact that all ERISA retirement plans

22  are publicly available through the annual Form 5500 filings those retirement plan sponsors are

23  required to file with the U.S. Department of Labor, Internal Revenue Service and Pension Benefit

24  Guarantee Corporation."  Dkt. No. 69.  The Court **DENIES** these requests as "the procedure for

25  judicial notice under Fed. R. Evid. 201 applies only to adjudicative facts."  *Care First Surgical*

26  *Ctr. v. ILWU-PMA Welfare Plan*, No. CV 14-01480 MMM AGRX, 2014 WL 6603761, at *3

27  (C.D. Cal. July 28, 2014) (citation omitted).  Defendant appears to use its requests as a vehicle for

28  making legal arguments, claiming, for example, that FINRA Rule 2040 "can be violated by

United States District Court
Northern District of California

United States District Court
Northern District of California

1    litigation intended to impede freedom of customer choice in selecting a broker dealer or registered

2    representative." Dkt. No. 69 at 3. The Court finds these requests improper. *See Von Saher v.*

3    *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citation omitted)

4    ("[J]udicial notice is generally not the appropriate means to establish the legal principles

5    governing the case.").

6          Defendant also filed a supplemental request to take notice of five Form 5500s. Dkt. No.

7    95. The Court **GRANTS** Defendant's request and takes notice of the Form 5500s for their

8    existence. *See White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *5 (N.D.

9    Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (taking judicial notice of Form 5500

10   filings).

11   **III.    ADMINISTRATIVE MOTIONS TO SEAL**

12         **A.    Legal Standard**

13          Courts generally apply a "compelling reasons" standard when considering motions to seal

14   documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana*

15   *v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the

16   common law right 'to inspect and copy public records and documents, including judicial records

17   and documents.' " *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor

18   of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome

19   this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion

20   must "articulate compelling reasons supported by specific factual findings that outweigh the

21   general history of access and the public policies favoring disclosure, such as the public interest in

22   understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations

23   omitted).

24          Records attached to nondispositive motions must meet the lower "good cause" standard

25   of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only

26   tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotation omitted). This

27   requires a "particularized showing" that "specific prejudice or harm will result" if the information

28   is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th

1    Cir. 2002); *see also* Fed. R. Civ. P. 26(c).  "Broad allegations of harm, unsubstantiated by specific

2    examples of articulated reasoning" will not suffice.  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

3    F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

4        **B.    Analysis**

5        Because the cross-motions for summary judgment are dispositive motions, the Court

6    applies the "compelling reasons" standard in evaluating the motions to seal.  Plaintiff filed two

7    motions to seal portions of exhibits containing the alleged trade secret information at issue.  Dkt.

8    Nos. 74, 83.  First, Plaintiff moves to seal portions of seven exhibits filed in support of its motion

9    for summary judgment.  Dkt. No. 74.  These include six exhibits attached to the Declaration of

10   Benjamin A. Emmert:  (1) Exhibit D, an email containing the spreadsheet at issue; (2) Exhibit E,

11   the transcript of the June 13, 2019 deposition of Ferguson; and (3) Exhibits F, G, H, and K, emails

12   that Ferguson sent to clients, Nathan White, and his own email at Teros.  Plaintiff also seeks to

13   seal Exhibit C to the Declaration of William Peartree, which includes an email forwarded from a

14   client.  Second, Plaintiff moves to seal portions of the transcript of the July 20, 2021 deposition of

15   Ferguson filed in support of its opposition to Defendant's motion for summary judgment.  Dkt.

16   No. 83.

17       Plaintiff states that these exhibits contain "MMA's trade secret information regarding its

18   clients, including the names of its clients, the name and contact information for its clients, and

19   certain financial information regarding its clients."  Dkt. No. 74 at 3.  Plaintiff contends that

20   "unauthorized disclosure would provide competitors information regarding MMA's customers and

21   cause MMA to lose trade secret protection for this information."  *Id.* at 3; Dkt. No. 83 at 4.

22   Plaintiff also argues this information is protected under the DTSA and California Civil Code

23   Section 3426, and "goes to the core of MMA's business practices and procedures."  Dkt. No. 74 at

24   4; Dkt. No. 83 at 5.

25       The Court finds that the identified exhibits contain confidential business and financial

26   information relating to the practices of MMA, constituting a sufficiently compelling reason to seal.

27   Plaintiff is careful to request to seal only those limited portions of the exhibits that contain the

28   client-related information at issue.  Accordingly, the Court finds that Plaintiff's request complies

United States District Court
Northern District of California

United States District Court
Northern District of California

1   with Civil Local Rule 79-5(b), which requires that the "request must be narrowly tailored to seek

2   sealing only of sealable material." Accordingly, the Court **GRANTS** Plaintiff's motions to seal.[3]

3   **IV.     CROSS-MOTIONS FOR SUMMARY JUDGMENT**

4          **C.     Legal Standard**

5          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

6   any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7   A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

8   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence

9   in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

10  But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

11  the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

12  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

13  or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

14  *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court

15  finds that there is no genuine dispute of material fact as to only a single claim or defense or as to

16  part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

17         **D.     Analysis**

18         The parties' cross-motions raise several issues, including (1) whether Plaintiff has

19  standing; (2) whether Plaintiff has shown the existence of a trade secret; and (3) whether

20  Plaintiff's state-law claims are preempted.[4]  Contrary to Defendant's assertions, Plaintiff argues

21  that it is entitled to summary judgment on its trade secret claims. The elements of trade secret

22  misappropriation under DTSA and CUTSA are essentially the same. *See Becton, Dickinson & Co.*

23  *v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21,

24  2018). A plaintiff must allege "(1) the plaintiff owned a trade secret; (2) the defendant

25

26  _____

    [3] The Court **GRANTS** Plaintiff's administrative motion to remove incorrectly filed documents.
27  Dkt. No. 76.
    [4] In its order granting in part and denying Defendant's motion for judgment on the pleadings, the
28  Court ruled that Plaintiff's state-law claims are preempted and dismissed those claims. Dkt. No.
    94. Accordingly, the Court need not address those claims here.

United States District Court
Northern District of California

1    misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Cisco*

2    *Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (citation omitted).  Given the

3    overlapping nature of the parties' arguments, the Court will address their motions simultaneously.

### i.    Existence of a trade secret

5        The parties dispute whether Plaintiff has shown the existence of a trade secret.  The DTSA

6    and CUTSA define a trade secret as information that (1) derives its economic value from not being

7    generally known, and (2) is subject to reasonable measures of secrecy by its owner.  *See* 18 U.S.C.

8    § 1839(3); Cal. Civ. Code § 3426.1(d).  As to the first prong, Defendant argues that it is entitled to

9    summary judgment on Plaintiff's trade secret claims because "the contact information Ferguson

10   retained regarding the clients was publicly available" and readily ascertainable from Form 5500

11   filings.  Mot. at 10.  At the outset, Plaintiff disputes the scope of client-related information at

12   issue.  Defendant appears to characterize the allegedly misappropriated information as being

13   limited to "the names and contact information of [Ferguson's] securities clients."  *See* Mot. at 2, 5,

14   10; Reply at 1, 9.  Plaintiff contends that the misappropriated information includes client names,

15   contact information, "financial information regarding MMA's clients," and "relationship

16   information that [defendants] used to unlawfully identify which clients would be most receptive to

17   their unlawful solicitations."  Opp. at 19–20.

18       Notwithstanding the amorphous nature of what Plaintiff calls "relationship information,"

19   Plaintiff's evidence supports a broader scope of relevant client information than Defendant

20   represents.  First, Plaintiff contends that Ferguson sent Nathan White a list identifying 46 clients

21   that he had solicited or planned to solicit.  The spreadsheet includes columns for client names,

22   estimated revenue, and categories identified as "Verbal Yes," "Expected Yes," and "Hopeful

23   Yes."  Dkt. No. 74-7, Ex. D.  Plaintiff emphasizes that the list "shows the estimated revenue from

24   each client and shows Mr. Ferguson was targeting the most lucrative clients first."  Opp. at 15.

25   Second, Plaintiff argues that Ferguson "sent several emails from MMA to his email at Teros

26   containing MMA's confidential information regarding a significant number of its clients."  Opp. at

27   16.  These emails indicate that Ferguson included several attachments, but the parties did not

28   describe the contents of the attached documents in any further detail.  Plaintiff generally asserts

United States District Court
Northern District of California

1    that the information at issue is not readily available as it identifies customers, "individuals within

2    those customers who are decision makers at each client or prospective client, their contact

3    information and other information that would allow a competitor to target MMA's clients."  Opp.

4    at 22.

5           In reviewing the record, the Court finds there is a genuine issue of material fact as to

6    whether the client-related information at issue was publicly available.  For example, Defendant

7    argues that retirement plan sponsors of any size are required to file a Form 5500.  Notably,

8    Defendant previously claimed that this requirement was limited to plans with 100 or more

9    participants.  But Defendant's expert, Cynthia King, explained the difference for plans with less

10   than 100 participants.  King stated:

> [A]ll 401k Plans with more than one participant are required to file a
> Form 5500 regardless of size.  If the Plan is under 100 participants, it
> can file a short-form, Form 5500-SF.  The Form 5500-SF requires the
> 401k plan's name, phone, address, and name and signature of the plan
> administrator.   It also lists the EIN, participant count, assets,
> commissions and fees paid to the Plan's administrative service
> provider (on line 8f), and income.

Dkt. No. 68-1 Declaration of Cynthia King ("King Decl.") ¶ 12.  To support its contention that the

contact information at issue is not a trade secret, Defendant points to the deposition testimony of

Plaintiff's Person Most Qualified, Bill Peartree, MMA's Director of Retirement Services.  Mot. at

6.  But in making the required inferences in favor of the nonmoving party (in this instance MMA),

the Court finds Peartree's testimony is one example of evidence showing a triable issue of fact as

to whether the client-related information constitutes a trade secret.

         Peartree stated that he did "not specifically" know what information Ferguson "took with

him," but he confirmed that he believed that "it related entirely to clients that [Ferguson] himself

serviced."  Dkt. No. 68-2, Ex. D Deposition of William Peartree ("Peartree Depo.") at 35:17-24.

He explained that he "kn[e]w for sure that [Ferguson] took some client files or information from

client files, and he . . . sent himself all of the contact information for . . . all the clients that he was

tied to as a client service exec."  *Id.* at 23:21-25.  He did not know if Ferguson "went outside and

looked for other clients" that other advisers were assisting or whether he took anything beyond the

contact person's names and emails.  *Id.* at 24:17-25:1, 35:25-36:3.  He confirmed that a "typical

United States District Court
Northern District of California

1    client file" would contain "a range of information about the client and its relationship to MMAS

2    that . . . would be proprietary" and "give MMA a strategic advantage." *Id.* at 23:11-20.

3         In elaborating on Ferguson's access to client files, Peartree stated that "taking [clients'] list

4    of assets and their plan reports from their plan reviews . . . would give [Ferguson] an upper hand

5    on continuing the relationship." *Id.* at 36:4-10.  Defendant's counsel asked Peartree whether he

6    would consider it a violation of MMA's policy if Ferguson had taken "the names and email

7    addresses of the clients that he already was servicing." *Id.* at 36:11-14.  Peartree responded that he

8    did not "believe so," but added a disclaimer that "[he] d[idn]'t write the policy." *Id.* at 36:15-17.

9    Based on the latter testimony, Defendant argues that Peartree did not consider client names and

10   contact information trade secret information.  Mot. at 6.  But this argument is inaccurate because,

11   as previously noted, it does not consider the full range of client-related information at issue.  And

12   even so, the Court does not find the testimony sufficient to mandate summary judgment in

13   Defendant's favor, particularly given Peartree's other testimony.  Specifically, Defendant's

14   counsel asked Peartree whether the names and email addresses in client files were ascertainable

15   from Form 5500 filings.  *Id.* at 10:16-18, 23:21-24.  Peartree responded that he was not sure as the

16   person who signs the form is "not always the same person that" the company "has a relationship

17   with" and that "there's no correlation between the person who signs the 5500 and who [their]

18   contact is." *Id.* at 24:8.[5]  All of this exemplifies that a triable issue of fact exists here.

19        There is also a triable issue of fact concerning the financial information at issue.  For

20   example, during his deposition, Ferguson appeared to suggest that he could have calculated the

21   estimated revenue listed in the spreadsheet with information from Form 5500 filings.  *See* Dkt.

22   No. 83-4, Ex. C Deposition of Ferguson ("Ferguson Depo.") at 79:12-82:12.  But neither party

23   adequately addressed the state of the record as to whether Ferguson used non-public information,

24

25   [5] Defendant did not include any argument in its briefing concerning the particular Form 5500s it
     included in its supplemental request for judicial notice.  Dkt. No. 95.  And these forms do not
26   make any difference in the outcome on the motion.  It appears that Defendant represents that at
     least the first form includes most of the information (including the "name of plan contact") that is
27   on the spreadsheet at issue.  *Id.* at 3.  But there is no contact name on the spreadsheet included in
     Dkt. No. 74-7, Exhibit D.  It is Defendant's responsibility to present the relevant evidence with a
28   clear argument showing how it establishes that there is no triable issue of fact, and it has failed to
     do so here.

1    such as specific information about clients' assets or preferences, to solicit or target more lucrative

2    clients, as Plaintiff suggests. *See* Opp. at 15; *see also* Peartree Depo.at 36:4-10. Based on the

3    evidence presented so far, the Court would not describe Plaintiff's case as overwhelming. But

4    Defendant has not carried its burden to show that even the contact information is publicly

5    available. And even if Defendant had proffered evidence suggesting as much, Plaintiff could

6    argue to the jury that the contact information, in combination with other client-related information

7    not generally known, constitutes a protectable trade secret. In all, there remain factual disputes as

8    to whether the information at issue was not publicly available, so as to "derive[] its economic

9    value from not being generally known." Accordingly, the Court finds that neither party has

10   established an entitlement to summary judgment.

11                  **ii.    Standing**

12          Defendant contends that Plaintiff lacks standing because it cannot establish harm. To

13   establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly

14   traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

15   favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547, 194 L.

16   Ed. 2d 635 (2016), *as revised* (May 24, 2016).

17          It appears that Defendant only disputes the first element. Defendant argues that FINRA

18   Rule 2040 precludes Plaintiff from recovering damages or other relief because Plaintiff is not

19   licensed to receive compensation for securities related work. That rule provides that:

20                  No member or associated person shall, directly or indirectly, pay any
                    compensation, fees, concessions, discounts, commissions or other
                    allowances to:
21                  (1) any person that is not registered as a broker-dealer under Section
                    15(a) of the Exchange Act but, by reason of receipt of any such
22                  payments and the activities related thereto, is required to be so
                    registered under applicable federal securities laws and SEA rules and
23                  regulations; or
                    (2) any appropriately registered associated person unless such
24                  payment complies with all applicable federal securities laws, FINRA
                    rules and SEA rules and regulations.
25
     Defendant argues that Plaintiff has no legal right to any purported loss of revenue from Ferguson's
26
     work. Defendant's expert, Cynthia King, opined that under the "regulatory requirements of the
27
     Investment Adviser Act of 1940 . . . MMA is not legally entitled to receive, directly or indirectly,
28

United States District Court
Northern District of California

1    compensation associated with providing investment advice, including advisory services to

2    employee benefit plans" and that "MMAS may not share fees associated with providing

3    investment advice with MMA."  King Decl. ¶ 8.

4           Plaintiff does not contest that it "is not a registered investment advisor" and "cannot

5    receive compensation for securities related work."  *See* Opp. at 16; *see also* Dkt. No. 68-5, Ex. C

6    Deposition of Kim Blackmore ("Blackmore Depo.") at 17:6-16.  But Plaintiff asserts that

7    Defendant fails to acknowledge that MMAS is part of MMA's "product line called retirement

8    services" and that "the revenue MMAS receives for securities related work is factored into

9    determining MMA's profitability."  Opp. at 16–17 (citing Dkt. No. 84-2, Ex. A at 57:21-23, 58:7-

10   11, 59:17-21, 60:1-25; 84-2, Ex. D at 16:3-18; 84-2, Ex. E at 35:22-38:3).  MMA's Director of

11   Finance and Operations, Kim Blackmore, explained that regulations require payments to be

12   received by MMAS and that the revenue is "required to remain within" MMAS and cannot be

13   paid out to MMA.  Blackmore Depo. at 34:10-15, 34:22-35:18.  She stated that the payments

14   "physically" stay in MMA, but explained that "from a management or product line reporting point

15   of view, [those] results are included in MMA's business line reporting."· *Id.* at 35:1-38:8.

16   Plaintiff relies on its reporting measures to assert that the payments are "factored into determining

17   MMA's profitability," and that the loss caused by Ferguson's misappropriation "would adversely

18   impact MMA's profitability and constitute lost profits to MMA."  Opp. at 17.[6]

19          Plaintiff also argues that it is entitled to seek other forms of relief, including unjust

20   enrichment or a reasonable royalty.  Opp. at 9, 18 (citing Cal. Civ. Code §§ 3426.2, 3426.3; 18

21   U.S.C. § 1836(a)(3)).  CUTSA provides that

22           (a) A complainant may recover damages for the actual loss caused by
             misappropriation. A complainant also may recover for the unjust
23           enrichment caused by misappropriation that is not taken into account
             in computing damages for actual loss.
24           (b) If neither damages nor unjust enrichment caused by

25

26   [6] Plaintiff argues that Teros itself receives revenue for securities related work even though it is not
     a FINRA/SEC registered entity. Opp. at 18.  White stated that the registered entity was "required
27   to . . . receive the advisory payments from clients," but noted it would "then be paid to Teros."
     Dkt. No. 84-2 at 41:3-10.  Whether or not this is true, the Court finds arguments about Teros'
28   related practices irrelevant for purposes of this motion (though it may well speak to the arguable
     disingenuousness of Teros' position here).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

> misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.
> (c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

4  Cal. Civ. Code § 3426.3. As to the DTSA, a court may award "damages for actual loss caused by

5  the misappropriation of the trade secret" and "damages for any unjust enrichment caused by the

6  misappropriation of the trade secret that is not addressed in computing damages for actual loss."

7  18 U.S.C. § 1836(a)(3). "[I]n lieu of damages measured by any other methods," a court may

8  award "the damages caused by the misappropriation measured by imposition of liability for a

9  reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret."

10  *Id.*

11        Defendant did not address Plaintiff's right to seek either of these forms of relief.

12  Defendant simply maintains that under FINRA Rule 2040, Plaintiff "has no legal right to receive

13  any compensation derived from Ferguson's provision of investment advisory and securities

14  services as a licensed representative of" MMAS. Reply at 5. In all, the Court finds there is at

15  least one genuine issue of material fact as to whether Plaintiff suffered any injury, including

16  whether the loss caused by the alleged misappropriation adversely impacted MMA's profitability.

17  *See, e.g.,* Dkt. No. 84-2, Ex. E at 35:22-38:3. This precludes summary judgment on the issue of

18  whether Plaintiff has standing to bring its trade secret claims. *See Murphy v. Best Buy Stores,*

19  *L.P.*, 690 F. App'x 553, 554–55 (9th Cir. 2017) ("To survive a motion for summary judgement, a

20  plaintiff need not definitively establish standing. Rather, [a plaintiff] [i]s only required to set forth

21  sufficient evidence to create a genuine issue of material fact concerning such requirements.").[7]

22  //

23  //

24  //

25  //

26  //

27

28  [7] As an unpublished Ninth Circuit decision, *Murphy* is not precedent, but can be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

**V.      CONCLUSION**

The Court **DENIES** the parties' cross-motions for summary judgment and **GRANTS** Plaintiff's administrative motions to seal.  Additionally, the Court **GRANTS** Plaintiff's administrative motion to remove incorrectly filed documents.  The Clerk is **DIRECTED** to permanently remove Dkt. Nos. 71-1 and 71-2 from the docket.


      **IT IS SO ORDERED.**

Dated: 9/10/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

13